## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:06cv135

| | |
|---|---|
| RALPH H. CLOANINGER,  ) | |
| ) | |
| **Plaintiff,**  ) | |
| ) | |
| Vs.  ) | **MEMORANDUM OF** |
| ) | **DECISION AND ORDER** |
| JOHN T. McDEVITT, in his official  ) | |
| capacity of Sheriff of Burke County,  ) | |
| North Carolina; YONGLA LO a/k/a  ) | |
| JOE LO, individually and in his official  ) | |
| capacity as Deputy Sheriff of Burke  ) | |
| County, North Carolina; STEVEN  ) | |
| PARLIER, individually and in his  ) | |
| official capacity as Deputy Sheriff of  ) | |
| Burke County, North Carolina; and  ) | |
| LIBERTY MUTUAL INSURANCE  ) | |
| COMPANY, as surety,  ) | |
| ) | |
| **Defendants.**  ) | |
| _____  ) | |

**THIS MATTER** is before the court in accordance with 28, United States Code,

Section 636(c), and upon defendants' second Motion to Dismiss (#13), plaintiff's Response

(#16), and defendants' Reply (#17). Having carefully considered defendants' motion, the

Amended Complaint, and the arguments of the respective parties, the court enters the

following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

### I.     Nature of the Case

In this action, plaintiff contends that defendants used excessive force in effecting his

arrest at his home. Plaintiff has asserted 10 causes of action ranging from Constitutional torts

to common law claims, including a novel claim for the purported tort of torture under a

resolution issued by the United Nations and a claim that disabled veterans have standing as

a protected class under 42, United States Code, Section 1985. Plaintiff is represented by counsel. Defendants have moved to dismiss some, but not all, of plaintiffs' causes of action under Rule 12(b)(6), Federal Rules of Civil Procedure.

## II.    Factual Allegations

The facts of the Amended Complaint have been construed as true for the limited purpose of considering defendants' Rule 12(b)(6) motion to dismiss. Rather than group his factual allegations together, plaintiff has asserted his material allegations of fact within his causes of action.

Plaintiff alleges that on the afternoon of March 9, 2005, Defendants Lo and Parlier were dispatched to plaintiff's home in Morganton, North Carolina, to perform a safety and well-being check of plaintiff and to transport plaintiff to Grace Memorial Hospital for an examination of his mental status. Amended Complaint, at ¶ 13. Such assignment was prompted by a request from plaintiff's physicians at the Veterans' Administration Medical Center in Oteen, North Carolina. Id.

At approximately 2:17 p.m., Defendants Lo and Parlier approached plaintiff's home and requested permission to enter. Id., at ¶ 14. In response , plaintiff attempted to open the door to his home to allow entrance, id., when Defendants Lo and Parlier forcibly gained entry to the home of the plaintiff and proceeded to beat the plaintiff with one or more weapons, including night sticks and fists. Id., at ¶ 15. Plaintiff alleges that he was beaten until he became unconscious and that defendants continued to strike and beat him while he was unconscious, resulting in broken bones in both arms. Id.[1]

After the alleged beating, plaintiff contends that Defendants Lo and Parlier then

---

[1]    How plaintiff knows that the alleged beating continued after he was unconscious is not explained.

forcibly removed him from his home and placed him in a patrol car.  Id.  After placing plaintiff in the car, plaintiff alleges that they then drove him to a jail in Morganton, where he was denied food, water, and medical assistance, id., at ¶ 16, by Defendants Lo and Parlier, the jail staff, and by defendant John T. McDevitt, Sheriff of Burke County.  Id.

Plaintiff then contends that Defendants Lo and Parlier made false statements to obtain an arrest warrant after the arrest and that they otherwise brought false criminal charges against the plaintiff in order to cover up their own misconduct in their "individual capacities," id., at ¶ 17, and to protect Defendant McDevitt.  Plaintiff contends that he has suffered severe physical pain and anguish, permanent injury to his person, confusion, consternation and anger, humiliation, embarrassment and emotional distress and as a result of this suffering, is entitled to recover monetary damages.  Id., at ¶ 18.

Plaintiff has also alleged that Defendants Lo and Parlier conspired to illegally enter his home, detain him, and deny him equal protection of the law.  Id., at ¶ 24.  The plaintiff further alleges they had no warrant for his arrest, id., at ¶ 30(a), no probable cause for arrest, id., at ¶ 30(b), no warrant to search his home, id., at ¶ 30(c), no probable cause to search his home, id., at ¶ 30(d), and that they had been dispatched to his home to provide assistance to him, id., at ¶ 30(e), because he was ill, confused hurt, or otherwise in need of transportation to an emergency room.  Id., at ¶ 30(f).  Further, plaintiff alleges that he was falsely arrested and imprisoned, id., at ¶ 36, that he was tortured, id., at ¶ 44, that Defendants Lo and Parlier took out false warrants against him and falsely testified against him at trial, id., at ¶ 48, and that he was subjected to malicious prosecution.  Id., at ¶ 51.

Plaintiff also alleges that Defendant McDevitt negligently hired Defendants Lo and Parlier, id., at ¶ 55, negligently supervised them,  id., at ¶ 60, and that Defendant McDevitt wrongfully held him prisoner in the jail and neglected his needs, entitling plaintiff to treble

damages.  <u>Id.</u>, at ¶ ¶ 64-67.

## II.    Standard Applicable to Rule 12(b)(6) Motions

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule

12(b)(6) authorizes dismissal based on a dispositive issue of law.  <u>Neitzke v. Williams</u>, 490

U.S. 319, 109 S.Ct. 1827, 1832 (1989); <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984);

<u>Conley v. Gibson</u>, 355 U.S. 41 (1957).  As the Court discussed in <u>Neitzke</u>:

> This procedure [for dismissal], operating on the assumption that the factual
> allegations in the complaint are true, streamlines litigation by dispensing with
> needless discovery and fact finding.  Nothing in Rule 12(b)(6) confines its
> sweep to claims of law which are obviously insupportable.  On the contrary,
> if as a matter of law "it is clear that no relief could be granted under any set of
> facts . . . a claim must be dismissed, without regard to whether it is based on
> outlandish legal theory . . . .  What Rule 12(b)(6) does not countenance are
> dismissals based on a judge's disbelief of a complaint's factual allegations."

<u>Id.</u>, at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where

it is clear that no set of facts consistent with the allegations in the plaintiff's complaint could

support the asserted claim for relief. <u>Taubman Realty Group LLP v. Mineta</u>, 320 F. 3d 475,

479 (4th Cir. 2003); <u>Migdal v. Rowe Price-Fleming Intl Inc.</u>, 248 F. 3d 321, 325-36 (4th Cir.

2001).

While the court accepts factual allegations in the complaint as true and considers the

facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need

not accept as true unwarranted inferences, unreasonable conclusions, or arguments." <u>Eastern

Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP</u>, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a
> complaint from dismissal under Rule 12(b)(6) when the facts alleged in the
> complaint cannot support the legal conclusion. And although the pleading
> requirements of Rule 8(a) are very liberal, more detail often is required than
> the bald statement by plaintiff that he has a valid claim of some type against
> defendant. This requirement serves to prevent costly discovery on claims with
> no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motion, the court has accepted as true the facts alleged by plaintiff in the complaint and has viewed them in a light most favorable to plaintiff.

## III.   Discussion

### A.   First Cause of Action: Section 1983

Plaintiff's first cause of action is brought pursuant to 42, United States Code, Section 1983. Plaintiff asserts claims against Defendant McDevitt in his official capacity and Defendants Lo and Parlier in their individual capacities[2] for unlawful search, unlawful arrest, excessive force, and deliberate indifference to plaintiff's medical needs. Section 1983 provides a plaintiff with a vehicle for seeking redress for violations of the Constitution and laws of the United States. Section 1983 is not jurisdictional, but simply creates a remedy for violations of constitutional rights and of rights conferred by an Act of Congress providing for equal rights. Hagans v. Lavine, 415 U.S. 528 (1974). It provides no substantive rights, merely a remedy. Chapman v. Houston Welfare Rights Org., 441 U.S. 600 (1979). Because it is the violation of Constitutional protections and federal laws that is actionable, and Section 1983 provides a remedy, counsel for plaintiff should, next time, set out each alleged constitutional violation as a separate cause of action. The court will, however, address the motion to dismiss as presented.

---

[2]     Plaintiff concedes at page 4 of his response that these claims are asserted against Defendants Lo and Parlier in the individual capacities only.

### 1. Motion to Dismiss Defendant McDevitt in his Official Capacity

Defendants have moved to dismiss the first cause of action asserted against Defendant McDevitt in his official capacity as Sheriff of Burke County for the alleged acts of his deputies, Defendants Lo and Parlier. For cause, defendants argue that a sheriff cannot be held liable under Section 1983 based on the doctrine of *respondeat superior* and that plaintiff has failed to satisfy the pleading requirements of Monell v. Dept. of Social Services, 436 U.S. 658 (1978). In response, plaintiff has argued that his Amended Complaint satisfies Monell and the notice pleading requirements of Rule 8 by simply alleging that Defendants Lo and Parlier were acting in accordance with Defendant McDevitt's "customs and usages."

Under Section 1983, liability is imposed on "any person who shall subject, or cause to be subjected, any person . . . to the deprivation of any rights. . . ." 42 U.S.C. § 1983. Accordingly, the statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct in executing the defendant's policies or customs. See Monell v. New York City Dep't of Social Servs., 436 U.S. 685 (1978); West v. Atkins, 815 F.2d 993, 996 (4th Cir. 1987), rev'd on other grounds, 487 U.S. 42 (1988) (no allegation of personal involvement relevant to the claimed deprivation); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (in order for an individual defendant to be held liable pursuant to 42, United States Code, Section 1983, it must be "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights . . .") (quoting Bennett v. Gravelle, 323 F. Supp. 203, 214 (D. Md. 1971), aff'd, 451 F.2d 1011 (4th Cir. 1971)).

Plaintiff has failed to allege that Defendant McDevitt was in any way personally involved in the alleged constitutional deprivations, only that he negligently hired and supervised his employees. The United States Supreme Court and the Court of Appeals for

the Fourth Circuit have repeatedly held that the doctrine of *respondeat superior* has no application in Section 1983 cases. Id.; Hughes v. Blankenship, 672 F.2d 403 (4th Cir. 1982). "Proving supervisory liability is a difficult task in § 1983 cases." Hughes v. Halifax County School Bd., 855 F.2d 183, 186 (4th Cir. 1988) cert. denied, 109 S.Ct. 867 (1989). Supervisory liability under Section 1983 cannot be established through the doctrine of *respondeat superior*. Monell v. New York City Dep't of Social Serv's, supra.; West v. Atkins, supra; Vinnedge v. Gibbs, supra. In Vinnedge, the appellate court stated, as follows:

> Liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of Respondeat Superior has no application under this Section [§ 1983].

Id., at 929 (quoting Bennett v. Gravelle, supra, at 214). See also Waller v. Hughes, No. SH-C-90-153, slip op. at 10-11 (W.D.N.C. December 10, 1990) ("Absent an affirmative showing that defendants acted personally to deprive plaintiff of a constitutional right, defendants cannot be held liable for the acts of . . . others because the doctrine of respondeat superior is not applicable to a Section 1983 claim.").

> Liability of local governments and their officials sued in their official capacity under § 1983 cannot be based on *respondeat superior* but arises only when . . . officials themselves, through an act establishing a policy or custom, cause the constitutional violation.

Gordon v. Kidd, 917 F.2d 1087, 1097 (4th Cir. 1992) (citing Monell, 426 U.S. at 694); see also Rizzo v. Goode, 423 U.S. 362 (1976).

As noted above, the plaintiff does not allege that Defendant McDevitt had any personal knowledge of or involvement in the alleged wrongdoings of March 9, 2005. In order to allege a cause of action under Section 1983 against Defendant McDevitt in his official capacity, plaintiff must allege that the cause of the constitutional violation was Defendants Lo's and Parlier's adherence to a *specific* policy or custom of Defendant McDevitt.

Plaintiff's argument that he has satisfied notice pleading by simply using thee words "custom

and usages," Response, at 5, is not sufficient as a matter of law:

> A plaintiff must identify a deficiency in a training program closely related to the injury complained of and must further show that the injury would have been avoided "under a program that was not deficient in the identified respect." *City of Canton v. Harris*, 489 U.S. 378, 391, 109 S.Ct. 1197, 1206, 103 L.Ed.2d 412 (1989).

Gordon , supra. The court will grant plaintiff's Motion to Dismiss plaintiff's First Cause of

Action as asserted against Defendant McDevitt in his official capacity.

### 2. Motion to Dismiss as to Defendants Lo and Parlier in their Individual Capacities

As mentioned above, plaintiff has conceded that he has not sued Defendants Lo and

Parlier in their official capacities, but has instead sued such defendants in their individual

capacities. Thus, Defendants Lo and Parlier are being sued only in their individual capacities

for alleged violation of plaintiff's fourth amendment right to be free from unlawful search,

Wallace v. King, 626 F.2d 1157 (4th Cir. 1980), cert. denied, 451 U.S. 969 (1981), his fourth

amendment right to be free from unlawful arrest, *California v. Hodari D.*, 499 U.S. 621

(1991),[3] his fourth amendment right to be free from excessive force in the effectuation of an

arrest, Graham v. Connor, 490 U.S. 386 (1989), and his fifth amendment right to be free

from deliberate indifference to a medical need while detained. Hill v. Nicodemus, 979 F.2d

987 (4th Cir. 1992) (deliberate indifference to serious medical needs of a pretrial detainee

is punishment sufficient to establish substantive due process claim).

---

[3]    Seizure for initiation of civil commitment proceedings is reviewed under the fourth amendment and requires probable cause to believe that person is mentally ill and that such mental illness creates danger to himself or others. Gooden v. Howard County, 917 F.2d 1355 (4th Cir. 1990).

Defendants Lo and Parlier have moved to dismiss the unlawful arrest claim, arguing that a state court's finding of guilt on the charge of communicating threats is *res judicata* as to plaintiff's claim of unlawful arrest. In response, plaintiff argues that the charge for which he was convicted, communicating threats, arose from conduct occurring after he was arrested on charges of resisting arrest. Response, at 7, f.n.1. In support of this argument, plaintiff has attached a document purporting to be the police report from the events of March 9, 2005, which appear to show, if considered, that the communication of threats by plaintiff occurred after his arrest was already effectuated. In accordance with Rule 201, Federal Rules of Evidence, a court may take judicial notice of matters of public record in ruling on a motion to dismiss or a motion for summary judgment, but a court may not take judicial notice of the truth of disputed factual matters. See Pina v. Henderson, 752 F.2d 47, 50 (2d Cir.1985)(police report not properly subject to judicial notice), *cited with approval,* United States v. LaRouche, 1993 WL 258525 (4th Cir. 1993).

If the court were to consider the report and read it for the proposition plaintiff proffers, then it would also have to be read as conflicting with plaintiff's allegation that he was arrested for resisting arrest, inasmuch as the report shows that he was arrested for purposes of an emergency involuntary commitment. Response, Attachment, Lo Report, at 2.

As discussed above, dismissal of a claim is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. In this case, defendants have moved to dismiss plaintiff's Section 1983 claim for false arrest on the basis of a conviction for an offense which may well have occurred after the initial arrest was effectuated, which would not be a fair result for plaintiff.

On the other hand, plaintiff appears to be proceeding on an inaccurate assumption that he was arrested for "resisting *arrest*." While not argued, logic dictates that a charge of "resisting arrest" can only spring from an underlying arrest on some other charge, which in this case appears to be an arrest for emergency commitment for purposes of a mental evaluation. While this court has not taken judicial notice of the contents of any police report for the truth of the matter therein asserted, the court has taken judicial notice that there is a police report which may or may not provide plaintiff with a basis under Rule 11 to reassert his claim for unlawful arrest. Thus, to allege unlawful arrest plaintiff will need to amend his Amended Complaint, if he can do so in good faith under Rule 11, to allege that the officers lacked probable cause to arrest him for purposes of an emergency commitment. See F.N. 3, supra.

Defendant's motion to dismiss this claim will, therefore, be allowed without prejudice, and plaintiff will be allowed to amend this aspect of his Amended Complaint within 10 days.

**B.      Second Cause of Action: Conspiracy Claims**

**1.      Section 1985(3) Conspiracy claim**

In order to assert a Section 1985(3) conspiracy claim, plaintiff must allege that the conspiracy to violate his constitutional rights was motivated by a specific class-based, invidiously discriminatory animus. Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). Plaintiff makes no such allegation, and the only possible class of which he is a member is the class of disabled veterans. Amended Complaint, at ¶ 27. As recognized by the controlling law in the Fourth Circuit, Harrison v. KVAT Tool Management, Inc., 766 F.2d155, 161-62 (4th Cir. 1985), the only  class of persons protected by Section 1985(3) are African-Americans. United Brotherhood of Carpenters and Joiners of America, Local 610, AFL-CIO

v. Scott, 463 U.S. 825, 836 (1983). Plaintiff argues that this court should abstain from deciding that disabled veterans are not among the class of persons protected by Section 1985(3) because no other court has addressed the issue. This court declines plaintiff's invitation and finds that the Fourth Circuit has been quite clear:

> In analyzing the *Scott* decision, we find little support for the contention that § 1985(3) includes in its scope of protection the victims of purely political conspiracies. Indeed, the opinion in *Scott* exhibits a noticeable lack of enthusiasm for expanding the coverage of § 1985(3) to any classes other than those expressly provided by the Court. *Wilhelm v. Continental Title Co.*, 720 F.2d at 1176. Since the Court in *Griffin* provided blacks a remedy under § 1985(3) against private conspiracies, no other group or class has achieved similar status. See, e.g., *Great American Fed. S & L Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). As a result, the Court provided no authority on which to base the extension of § 1985(3) protection urged upon us here.

Harrison v. KVAT Food Management, Inc., 766 F.2d 155, *161 (4th Cir. 1985). Neither in the plain language of the statute, the Congressional record, nor the decisions of any court can this court find any authority, intent, or basis for extending the protections of Section 1985(3) to disabled veterans. Indeed, there are specific federal laws that provide protections for disabled veterans which postdate the enactment of Section 1985(3), including the Rehabilitation Act of 1973, 29 U.S.C. § 794, the Americans with Disabilities Act of 1990, 42 U.S.C. § 12131 *et seq.*, and the Vietnam Era Veterans' Readjustment Assistance Act, 38 U.S.C. § 4211 *et seq.* Indeed, nothing in the vast body of law that has developed since 1871, when what is now Section 1985(3) was first conceived, indicates any Congressional intent to include disabled veterans in the class of person protected by that provision. See Wilhelm v. Continental Title Co., 720 F.2d 1173, 1177 (10th Cir. 1984).

It is clear that in creating Section 1985(3) and its predecessors, Congress acted to protect African-Americans whose enjoyment of liberty was being targeted by conspiracies

motivated by a racial animus directly toward such community.  <u>Scott</u>, <u>supra</u>, at 836.  The court will, therefore, grant defendant's Motion to Dismiss the Section 1985(3) aspect of plaintiff's Second Cause of Action for Conspiracy.

## 2.    State Law Conspiracy Claim

In the second part of plaintiff's conspiracy claim, plaintiff attempts to assert that Defendants Lo and Parlier conspired to "intimidate, harass, embarrass, abuse and batter the Plaintiff . . . ."  Amended Complaint, at ¶ 24.  In attempting to allege necessary overt acts in furtherance of the conspiracy, plaintiff alleges that "in furtherance of the agreement," the "Defendants [Lo, Parlier, and McDevitt] committed the acts and omissions alleged throughout this Complaint."  <u>Id.</u>, at ¶ 25. This claim of conspiracy is dependent on state law.

North Carolina law provides that "the same alleged acts" cannot be received "for both the basis of a claim for conspiracy to commit certain torts and the basis of claims for those torts."  <u>Jones v. Greensboro</u>, 51 N.C.App. 571, 584 (1981), <u>overruled on other grounds</u>, <u>Fowler v. Valencourt</u>, 334 N.C. 345 (1993).  Plaintiff has alleged that "two or more of the Defendants entered into an agreement or mutual understanding with each other whereby they conspired that Defendants Lo and Parlier" would violate Plaintiff's rights. Amended Complaint, at  ¶ 24.  Plaintiff further alleges that "[t]he Defendants exhibited a meeting of the minds inasmuch as they made a coordinated effort to work together to forcefully and illegally carry out the acts described throughout this Complaint." Amended Complaint, at ¶ 26.

Plaintiff's allegations are precisely the type of pleading which the North Carolina courts prohibit.  If such pleadings were allowed to go forward, then any tort allegedly committed by two or more persons would yield a conspiracy, resulting in multiplicity of

claims, the possibility of multiple recoveries, congestion of the dockets, and undue expense to the taxpayer. The court has closely read all the materials submitted by plaintiff and cannot find any alleged facts beyond the facts alleged in support of the underlying torts that would even merit allowance of further amendment to properly allege a state-law conspiracy. Indeed, the facts as alleged by plaintiff, if true, would not support even an inference that these defendants acted in any premeditated manner or reached a meeting-of-the-minds to violate plaintiff's rights or cause harm to him prior to arriving at plaintiff's home.

Plaintiff's alleged claim for a common-law conspiracy does not conform to North Carolina law, is multiplicatus of other causes of action in tort, and will be dismissed for failure to state a cause of action. To the extent that plaintiff has attempted to allege such cause of action in defendants' official capacities, which he apparently denies, such claim cannot survive application of the intra-corporate conspiracy doctrine.[4]

### 3. Third Cause of Action: False Arrest

In the third claim for relief, plaintiff asserts a common-law claim for false arrest. The problems with plaintiff's federal claim for false arrest were discussed above in conjunction with plaintiff's Section 1983 claim against Defendants Lo and Parlier in their individual capacities. Such discussion is entirely applicable here, and is incorporated herein as if fully set forth. To allege unlawful arrest in violation of common law, plaintiff will need to amend his Amended Complaint, if he can do so in good faith under Rule 11, to allege that the officers lacked probable cause to arrest him for purposes of an emergency commitment.

---

[4] According to North Carolina trial courts, "[a]lleging that a corporation is conspiring with its agents, officers or employees is accusing a corporation of conspiring with itself." Garlock v. Hilliard, 2000 NCBC 11 at ¶ 26 (Mecklenburg County Super. Ct. Aug. 22, 2000) (Tennille, J.). While the appellate courts of North Carolina have yet to adopt the intra-corporate immunity doctrine, see Lenzer v. Flaherty, 106 N.C.App. 496, 511-12 (1992), the state trial courts have. See Garlock, supra.

Defendant's motion to dismiss this claim will, therefore, be allowed without prejudice, and plaintiff will be allowed to amend this aspect of his Amended Complaint within 10 days.

### 4. Fourth Cause of Action: False Imprisonment

To state a cause of action for false imprisonment, a plaintiff must allege that "illegal restraint of one's person against his will." Mobley v. Broome, 248 N.C. 54, 56 (1956), overruled on other grounds, Fowler v. Valencourt, 334 N.C. 345 (1993). A claim of false imprisonment can be based upon a false arrest. Id. It may also be based on the imprisonment which followed the arrest; however, in this case, the imprisonment which followed plaintiff's arrest also included a charge of communicating threats, a charge as to which plaintiff was found guilty, establishing probable cause for plaintiff's detention or imprisonment subsequent to his commission of that offense in the presence of Defendants Lo and Parlier. Myrick v. Cooley, 91 N.C.App. 209, 214 (1988).

Thus, if plaintiff has a common-law claim for false imprisonment it is limited to the time he was physically arrested until the time he communicated threats to Defendant Lo, making any such claim dependent upon an allegation that plaintiff was falsely arrested for an emergency commitment. Because such allegation is lacking, plaintiff fails to state a claim for false imprisonment, requiring dismissal without prejudice. Leave will be granted to plaintiff to amend his Amended Complaint to accurately assert this claim.

### 5. Sixth Cause of Action: Torture

In plaintiff's Sixth Cause of Action, he attempts to bring a claim for torture. No where in the common law of North Carolina is a cause of action for "torture" recognized, perhaps because the tort of "intentional infliction of emotional distress" covers a great deal of that territory, with assault and battery covering the rest. Instead of relying on the common

law, plaintiff argues that he has stated a claim under the United Nations' *Convention Against Torture*, as a result of which the United States has agreed that it will not expel, extradite, or return a person to a country where such person would be subjected to torture. 18 U.S.C. § 2340A. The same statute goes on to provide, however, that "[n]othing in this chapter . . . shall be construed as creating any substantive or procedural right enforceable by law . . . in any civil proceeding." 18 U.S.C. § 2340B. Finding that there is no civil cause of action for torture, be it federal or state, the court will dismiss plaintiff's Sixth Cause of Action with prejudice.

### 6. Seventh Cause of Action: Malicious Prosecution and False Statements

#### a. Malicious Prosecution

In North Carolina, the essential elements of a claim for malicious prosecution are: (1) that defendant initiated the earlier proceeding; (2) malice on the part of defendant in doing so; (3) lack of probable cause for the initiation of the earlier proceeding; and (4) termination of the earlier proceeding in favor of the plaintiff. Best v. Duke Univ., 337 N.C. 742 (1994). Unless plaintiff can allege that the conviction was procured by fraud or other unfair means, a conviction in state court is conclusive evidence of probable cause for initiation of the prosecution, even if the conviction is later overturned on appeal. Priddy v. Cook's United Dep't Store, 17 N.C.App. 322 (1974).

It would appear from the allegations of the Complaint, as well as the warrant/judgment submitted by defendants (of which the Court can take judicial notice under Rule 201 inasmuch as such documents constitute part of an official court record), that plaintiff was formally charged with resisting arrest and communicating threats

contemporaneously. Defendants' Motion to Dismiss, Ex. 1. Such exhibit also shows that while both warrants issued at the same time, they were procured as separate warrants and disposed of by separate judgments.

While not argued by either side, the question is when multiple charges are brought by separate warrants, whether a conviction on one offense is *res judicata* on the element of probable cause for initiation of a prosecution on both offenses, the second of which the state court dismissed at the close of the state's evidence based "on the face of the warrant." Defendant's Response, Ex. 1, at 2.

There appear to be no North Carolina cases on this point, so this court has looked to decisions of other jurisdictions. In <u>Fulton v. Robinson</u>, 289 F.3d 188, 197 (2d Cir.2002), the Court of Appeals for the Second Circuit held that "an accused arrested on multiple charges but convicted on only one may proceed with a claim for malicious prosecution on the charge on which he was not convicted . . . ." Also, in <u>Janetka v. Dabe</u>, 892 F.2d 187 (2nd Cir. 1989), the Court of Appeals for the Second Circuit found that dismissal of a charge for resisting arrest could form the basis of a malicious prosecution claim even though the plaintiff was convicted of disorderly conduct. The appellate court reasoned that plaintiff had been "charged with two distinct offenses involving distinct allegations," <u>id.</u>, at 190, and held, as follows:

> Allowing police officers to add unwarranted misdemeanor charges to valid violation charges may force an accused to go to trial on the misdemeanor when he otherwise would plead to the violation. If the dispositive factor is whether, as the district court held, the charge resulting in acquittal "arose out of events that occurred on the same occasion" as a charge resulting in conviction, then police officers could add unsupported serious charges to legitimate minor charges with impunity.

<u>Id.</u> From the allegations now before this court, it would appear that the resisting of arrest

charge and the communication of threats charge were distinct offenses involving distinct allegations.

To the extent plaintiff's cause of action for malicious prosecution is based on the dismissed charge of resisting arrest, that claim would survive Rule 12(b)(6) analysis; however, it is difficult to segregate such a claim from contentions that cannot proceed forward.  Shotgun pleading, to the effect that "actions and omissions of . . . [Defendants Lo and Parlier] as described with particularity throughout this Complaint, constitute malicious prosecution of the Plaintiff," Amended Complaint, at ¶ 51, do little to advance plaintiff's claim.  Defendants' Motion to Dismiss the malicious prosecution aspect of plaintiff' seventh cause of action will be granted to the extent that plaintiff is attempting to base such claim on the charge of communication of threats, see id., at ¶ ¶ 50-51, but will be denied as to plaintiff's claim of malicious prosecution based on the dismissal of the charge of resisting arrest.  Such denial will, however, be without prejudice inasmuch as the Fulton rationale was not briefed.

### b.    False Statements

Plaintiff appears to allege that Defendants Lo and Parlier made false statements under oath to the state magistrate in applying for arrest warrants,  Amended Complaint, at ¶ 48, and in court in providing testimony against him.  Id.    Defendants have moved to dismiss this claim based on privilege and absolute privilege.  Riley v. Stone, 174 N.C. 588, 597 (1917), Jones, supra, at 584.  In response, plaintiff argues that his claim in tort for false statements is the civil equivalent to perjury, and is therefore actionable.  Response, at 16.

In North Carolina, however, "a civil action in tort will not lie for perjury or subordination of perjury."  Henry v. Deen, 61 N.C.App. 189, 196 (1983), rev'd on other

grounds, 310 N.C. 75 (1984). Defendant's motion to dismiss plaintiff's false statements claim contained in the seventh cause of action will be granted.

### 7.    Tenth Cause of Action

Defendants have withdrawn their motion to dismiss this cause of action based on plaintiff's clarification that such state-law statutory claim is against unknown jail staff.

## IV.    Conclusion

For the reasons discussed above, the court will grant defendants' Motion to Dismiss in part and deny such motion in part.

If plaintiff decides to again amend his Amended Complaint, it is very possible that defendants will again move to dismiss. Plaintiff is advised that it is a rare case where police conduct will result in so many claims, and that the length of a complaint has very little to do with the merits of a case. In fact the federal rules envision very concise pleading. Fed.R.Civ.P. 8.

Further, counsel for plaintiff is strongly encouraged to review the Amended Complaint in light of the findings and conclusions in this Order. While practices are as individual and unique as the attorneys who draft pleadings, there are some pleading conventions that, if not followed, actually cause delay, confusion, and undue expense.

First, factual allegations should be set out separate and apart from the actual claims. Second, a cause of action need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed.R.Civ.P. 8(a). Third, as to the claims under Section 1983 each alleged violation of the Constitution or laws of the United States merits a separately numbered cause of action. Likewise, two separate and distinct common law claims should not be lumped into one cause of action. Fourth, where there are multiple

defendants, each defendant and the capacity in which they are being sued should be referenced in each cause of action, much akin to a well written federal indictment. Fifth, only claims that are warranted by existing law or a non-frivolous argument for the advancement of law should be asserted. Sixth, and finally, this court has found that were shotgun pleading is employed, meritorious claims can sometimes be lost in the crowd.

Before taking the bench, the undersigned drafted hundreds if not thousands of civil complaints, and the undersigned is fairly certain that not all those complaints were models of clarity. Thus, the above observations are not intended to be critical and are made only to further the interests of all parties, as well as this court's, in the expeditious and inexpensive disposition of this case.


## ORDER

**IT IS, THEREFORE, ORDERED** that defendants' second Motion to Dismiss (#13) is **GRANTED** in part and **DENIED** in part as follows:

(1)     defendants' Motion to Dismiss plaintiff's First Cause of Action as asserted against Defendant McDevitt in his official capacity is **GRANTED**, and such claim is **DISMISSED** with prejudice;

(2)     defendant's Motion to Dismiss plaintiff's First Cause of Action against Defendants Lo and Parlier in their individual capacities for unlawful arrest is **GRANTED** without prejudice, and plaintiff is **ALLOWED** to amend this aspect of his Amended Complaint within 10 days;

(3)     defendant's Motion to Dismiss plaintiff's Second Cause of Action, Section 1985(3) Conspiracy, is **GRANTED**, and such claim is **DISMISSED** with

prejudice;

(4)     defendant's Motion to Dismiss plaintiff's Second Cause of Action, State law Conspiracy, is **GRANTED**, and such claim is **DISMISSED** with prejudice;

(5)     defendant's Motion to Dismiss plaintiff's Third Cause of Action for Common Law False Arrest is **GRANTED** without prejudice, and plaintiff is **ALLOWED** to amend this aspect of his Amended Complaint within 10 days;

(6)     defendant's Motion to Dismiss plaintiff's Fourth  Cause of Action for Common Law False Imprisonment t is **GRANTED** without prejudice, and plaintiff is **ALLOWED** to amend this aspect of his Amended Complaint within 10 days;

(7)     defendants, Motion to Dismiss plaintiff's Sixth Cause of Action for Torture is **GRANTED** and such claim is **DISMISSED** with prejudice;

(8)     defendants' Motion to Dismiss plaintiff's Seventh Cause of Action for Malicious Prosecution is **GRANTED** to the extent that plaintiff is attempting to base such claim on the charge of communication of threats, and is otherwise **DENIED** without prejudice to the extent such claim is based on the state-court's dismissal of the charge of resisting arrest;

(9)     defendants' Motion to Dismiss plaintiff's Seventh Cause of Action for False Statements is **GRANTED,** and such claim is **DISMISSED** with prejudice; and

(10)    defendants' Motion to Dismiss plaintiff's Tenth Cause of Action is **DENIED**

as withdrawn.

Signed: September 3, 2006

Dennis L. Howell
United States Magistrate Judge